We'll proceed with the next case, number 216047 United States v. McCrary. Your Honors, and may it please the Court, my name is Andrew Casey. I'm here on behalf of the Appellant and Defendant Robert McCrary. Appellant asks this Court to remand this matter for resentencing based upon the unreasonableness of the sentence. Shortly, Your Honors, I'll go through the facts of the case that I think are pertinent to the request that is being made. It's important to note that there is a late investigation that occurs in this case from a 2016 death that had occurred to a person named Gabe Stewart. There were later, as part of that investigation, a couple of years down the road, discovery of crimes committed by the Defendant, to which the Defendant has entered a plea of guilty. And those crimes at the time were charged by indictment in 2020. They were a conspiracy count related to fentanyl, and then there was a possession with intent to distribute also related to fentanyl. As part of the plea agreement, that count won. The conspiracy count was dismissed. That led through the pre-sentence report. The pre-sentence report was argued to the District Court, reduced the base offense level of this case to a 12. He adjusted that to 10 based upon the acceptance of responsibility. And then as part of that, we had a criminal history category of 1, which led to a guideline range of 6 to 12 months for the distribution of fentanyl. The District Court, and this is the reason for the appeal, the District Court's ruling in this case comes to that language inside the order about whether or not there's a death that was contributed to by Defendant's conduct in this case. And so shortly, the facts that relate to that. Well, let's talk about, first of all, we've got an issue about waiver, I guess. Yes, we do. So let's first talk about your procedural reasonableness arguments as opposed to your substantive reasonableness, because there's a question there whether you waived that right to appeal. I agree with that, Your Honor, and we're looking at the record, volume 1, page 32. This is part 12 of the plea agreement, subsection B, and it states that as accepted, stated immediately below, defendant waives the right to appeal defendant's sentence by the court, including any restitution, and the manner in which the sentence is determined, and then it creates that exception that we can always appeal for substantive reasonableness. What I'm proffering to the court as to why this waiver is not enforceable against this manner in which the sentence is determined. I don't believe that even in light of this language in this waiver, that if there is a finding of fact that is erroneous, that has no basis or has no substantial evidence that can be a part of it, that this court can authorize and say that that's a reasonable decision of the court. And I don't think that that's a waiver that is envisioned. The waiver appears to be as to everything except substantive reasonableness. And all of the arguments, at least most of the arguments you make, except one, pertain to procedural reasonableness. And I know at least in the Goldberg case, and that's unpublished, I understand, but we have an identically worded appeal waiver that we said waived everything except substantive reasonableness. And I guess here's the issue that I have with it, Your Honor. I understand these waivers when we take them and we get them from the government a lot of different times. What we end up with is, hey look, we don't know what the final guideline range is going to be when we're consulting and advising a defendant. It could be this, the judge could find that. We are waiving anything related to an incorrect guideline range. In this case, what we're talking about, a question related to we have a part of a departure that is denied for the government that is based on there was a death and there was a result and the court said we don't have evidence of that. And then in the same setting, part of the reason for an upward variance is there's a death that is contributed to based upon it. That level of just the facts and the nature of the evidence that we're dealing with is something to me that is categorically different than what I'm advising. You're saying that the court relied on clearly erroneous facts. That's, we've said that's a procedural objection. That's correct, Your Honor. So do we look at all the statutory maximum potential in this case? The statutory maximum was 20 years. 20 years, Your Honor. And the court specifically noted your client's lack of sincere acknowledgement of the seriousness of the offense. And to me, that justifies a little upward departure, maybe upward variance. And also noted that his actions, he doesn't seem to think that much about them. He really looked at this fella pretty closely. And then at Fentanyl, it's the scourge of the, you know, this decade. It's killing people everywhere. And so he went up to 48 months. That's not much of an increase unless you say the guidelines are mandatory, which we all know they're not. No, they're not. The court's clear on that. And there are three parts of that question, Your Honor, that I'd like to answer a little bit separately. And so first goes to the lack of remorse. And I want to be clear about what the record says on this, because this defendant accepted responsibility. He sat down with the FBI and provided them. Oh, yeah. Everybody gets at least two. Right, right. And usually three. The question is. But that still doesn't answer the question. Is he really remorseful? Does he really accept responsibility? And I think the question and why I'm presenting it this way, Your Honor, is the question of lack of remorse in this record relates to the lack of remorse over the death of Gabe Stewart, which this defendant and counsel have adamantly suggested he was not responsible for and did not contribute to. And that's the fact finding question that we the action that he was doing and for everything that he's admitted guilt to and then turned around. It's a question of, because what the court had suggested on the record about that lack of remorse is you're more concerned about the effect this has had on your mother than on somebody that died from this. But that begs the question of, did a death, did his conduct contribute to that death? And right now, as we see in this record, there's not evidence that suggests that. Which pertains to the facts and is a procedural objection, which takes me back to my question. Everything that you're saying, I understand, but it all seems to be something you should have objected to to give the court an opportunity to make those conclusions. And so I want to make sure that for clarity of the record, defense counsel at the time, and I wasn't there, but defense counsel at the time did object to the PSR and all these different going into the objections, what did defense counsel and defendant, more importantly, know that they were waiving as part of that? Because there were numerous objections that were there and they maintained the, we did not contribute to anyone's death. Well, if we interpret this provision in the plea agreement as a waiver of everything except substantive reasonableness objections, can you tell me how any of your objections, other than the ones we just discussed, that go to substantive reasonableness, how any of those are non-procedural? If this, and out of candor, if this court finds that the waiver in 12b, is that all encompassing propositions one and two of the brief are, I believe, dead on arrival. But the question, proposition one is a lot more vague to me than proposition two. Proposition two, I think, is clearly dead on arrival. It goes to questions of guideline calculations. It goes to those things that we know we're waiving and this type of thing. Proposition one, I think, goes a lot more to the did a death get contributed to it. And that leads to then, we only get to talk about substantive reasonableness. And the difference that I had with the cases on substantive reasonableness, and I looked at the case cited by the government, the Lake case, United States versus Lake, and this was a case that I thought was substantially different in facts than this case. That was a case where there was a conspiracy. Somebody was sending heroin across to their dad, who was also convicted and sentenced as part of it. And as part of that, the dad directly, we know there was evidence of, gave heroin to somebody who used it, who died. Whereas here, the details are a lot more vague and murky. And the middle person in between, which in the Lake case is Ramon Blake, in this case is a person allegedly named Jonathan Messick, who, and whenever we talk about arbitrariness and those types of things, goes to the question of proportionality, who's somebody who has not been charged, who is somebody who has not been brought to justice, somebody who, as far as we can tell, did not give the level of cooperation that this defendant gave to the FBI. And that person has not had any legal ramifications whatsoever, whereas this defendant, who's a first-time offender, has wound up with, at least in comparative terms of what his guideline range was, a very significant sentence. And whenever we looked at it in terms of that, I think that that's something that is dramatically different that this court can take into consideration whenever it's looking at that. But I also think that when we look at the standards that we get for substantive unreasonableness, there is a question, and this is why I'm so concerned and want guidance from this court about what proposition means and whether or not it's truly waived, is because if we have clearly erroneous fact-finding, does that speak to arbitrariness? If we have completely disproportionate sentences, does that speak to given the offense conduct where we have somebody who was fully rehabilitated, who spent years inside treatment, who did all the things that he was supposed to do, who cooperated, and who, in the guise of all the 35-53-8 factors, was someone that did not need a 48-month punishment as per what the defense is arguing? And then lastly, of course, to go back to the question that was given, your Honor is right that we're dealing with fentanyl. It is the scourge of 2021 and 2022 and even 2020. Back in 2016, we knew very little, and we're talking about a delay of four years in bringing about charges for a drug that at the time we've learned so much more about, and it you know, delivering fentanyl in 2021 or 2022 when we go back to 2016. I'll open up to questions for the court, but that's the best arguments I have for you. Thank you. Thank you, counsel. May it please the court, Stephen Craig on behalf of the United States. The district court properly sentenced Mr. McCrae to 48 months imprisonment. As my opposing counsel has pointed out, and as this court has acknowledged, there are two essentially components to the sentencing argument. There's a procedural component and a substantive component. Mr. McCrae waived the right to appeal the procedural unreasonableness of his sentence, whether it's a guideline calculation or a misstatement of erroneous objection or erroneous conclusion of facts or anything like that. He waived the right to appeal the manner in which the sentence was determined. This waiver language is rather odd. It is a very broad waiver. Well, not broad. Odd is what I said. Sorry. It may be broad, but it's a little hard to determine. I understand that we have the Goldberg case, which is unpublished, but if the sentence is above the advisory guideline range determined by the court to apply to McCrae's case, this waiver does not include McCrae's right to appeal specifically the substantive reasonableness of his sentence. I will admit that sentence is one that I... Kind of a mind bender. I admit that sentence is one that I wish would be clear. Shouldn't it be clear when you're waiving all of your rights to appeal a sentence, including all procedural objections that you... Should it be clear you know what you're waiving there? So that sentence taken on its own would be extremely awkward, but that sentence following the preceding sentence in which the the right to appeal his sentence, including restitution, and the manner in which the sentence is determined, if we fully stop there, that would be waiving both procedural and substantive reasonableness. What that awkward sentence does is say, if the sentence is above the guideline range, you reserve the right to appeal the substantive. Right. And yes, it could be clear. So you're saying it's unclear, but as long as we take it into account with the prior sentence, which clarifies what's really being waived here, that you understand what you're not waiving. Right. I wouldn't say it's not clear. I would say it's very awkward, and I think I would submit standing alone it would be meaningless, because without the first sentence, there is no waiver. And so to say in a plea agreement without a waiver, that in the event of an upward variance, you reserve the right to appeal that sentence, or to appeal the substantive reasonableness of the sentence. I see your point. Would be extremely odd. But here what it stands for, read in context of the preceding sentence, is it reserves the right to appeal the substantive reasonableness of an above-guideline sentence, which is what we have here. But the procedural unreasonableness of the sentence falls within the broad waiver of the right to appeal the sentence and the manner in which the sentence is determined. And while we cited Goldberg, there were a plethora of cases with the standard language that we've used in our district, that this court has upheld multiple times against claims of procedural unreasonableness. Now as to the factual findings or the phrase manner in which the sentence is determined, counsel for Mr. McCurry argued that it's vague, but again I wouldn't go back and say it's not vague, it's broad. Just because it's extremely broad doesn't mean that it's vague so a defendant could not understand it. Mr. McCurry didn't touch upon either the second or third contractor, so unless the court has any questions with regards to those, I will simply say the burden falls on him and he has failed to satisfy his burden as to those. Turning to the substantive reasonableness argument, this is a case in which the district court found, and this finding was not objected to, that Mr. McCurry distributed drugs to Mr. Messick and either directly or indirectly through Mr. Messick to Mr. Stewart. And it was not objected to that Mr. Stewart died as a result of the combination of both alcohol intoxication and fentanyl intoxication. There is no evidence in the case of Mr. McCurry anywhere else and so the direct causal line flows from Mr. McCurry to Mr. Stewart and ultimately the drugs that he distributed resulted in or contributed to Mr. Stewart's death. The district court in determining a sentence was well within its rights to consider as both part of the nature and circumstances of the offense, as well as the need to protect the public, the fact that the distribution of fentanyl here caused Mr. Stewart's death. The district court, despite the fact somebody died, the district court didn't sentence at 10 years or 15 years or 20 years, it sentenced four years imprisonment. While this court, to the extent this court might have been inclined, might be inclined to say it would have reached 36 months or 24 months or 12 months, at the end of the day, because this is a substantive reasonableness appeal, because the question is did the district court abuse its discretion, the question isn't what this court might do on a de novo review, but whether the district court acted within the broad range of sentencing possibilities. In light of Mr. Stewart's death, in light of the fact that there was a lack of remorse, Mr. . . . The lack of remorse is primarily what the district court here relied on, it seemed, and it got there by saying, as Appellant's counsel tells us, well, he didn't, you know, when he was asked if he was remorseful, I'm not sure what the question was, but his response was, I really hated what this did to my mother. And that's where, that's how the district court gets to, well, he's not remorseful about the death, because he talked about being remorseful about what it did to his mother. That's the way I understood it anyway, is that correct? That is partially correct. That is, I think, a significant portion of why the district court concluded there was no sincere remorse. An additional part of that was Mr. McCrary greatly downplayed his relationship with Mr. Stewart. At his elocution, Mr. McCrary said they weren't friends, they were associates. But whenever he was being interviewed by the FBI in this case, he explained that, no, they went out partying, they did things together, they pre-gamed at, I believe, Mr. McCrary's house, or one of their houses, and generally it was Mr. McCrary, Mr. Vesic, and Mr. Stewart. That fell off whenever they ended up living in different cities, but whenever they got back together, they would still go out and do things. Mr. McCrary downplayed that relationship essentially to distance himself as much as he could from Mr. Stewart, to play into the argument that what happened with Mr. Stewart was completely independent of the crime that he was convicted of. And I think Mr. McCrary's acceptance of the specific thing that he was convicted of, without accepting the broader results of his actions, also goes into why the district court said there was not a sincere acceptance of responsibility to that extent. At the end of the day, going to Lake, and I know Mr. McCrary mentioned that, Lake, I would submit, is on all fours with this case. True, the facts don't precisely match up. There was a conspiracy that there was no conviction to in this case, but that, to some extent, might go against the defendant and might go in favor of the higher sentence. That's because in Lake, the defendant in that case did not directly distribute the drugs that helped contribute to the death. Here, it's an open question. At least Mr. McCrary distributed the drugs to Mr. Vesic, who then gave them to Mr. Stewart. But the evidence, paragraph 14 of the PSR, was that both Mr. Stewart and Mr. Vesic were going to Mr. McCrary to get the thing. And so it's very possible that Mr. McCrary distributed the drugs directly to Mr. Stewart. Is that important, whether it went directly to Stewart or whether they went to Stewart through McCrary? No, Your Honor. And I think Lake helps explain why. Because in Lake, the defendant did not directly distribute the drugs to the deceased. In Lake, as defense counsel pointed out, the drugs were sent by the defendant to Kogenspeer, who ultimately distributed. And in Lake, the defendant was sentenced to 59 months imprisonment. Here, the defendant was sentenced to 48 months imprisonment. In Lake, the guideline range was 0 to 6 months. Here, the guideline range was 6 to 12 months. So both on the actual sentence end and on the guideline range end, you have a much smaller variance. In both cases, the defendants engaged in post-defense rehabilitation. And in both instances, the distribution of the drugs contributed to somebody's death. And in Lake, this court ultimately concluded that the district court did not abuse its discretion in sentencing Mr. Lake to 59 months imprisonment. If the court, unless the court has any further questions, we'd ask that you dismiss the portion of the appeal related to the procedural unreasonableness and affirm as to the substantive reasonableness. Thank you. Your Honors, I have less than two minutes, I believe, so I'll be quick. And I just want to note about this one particular portion of the argument. We're talking about that waiver as it to in crafting your opinion. The thing that I do think is important for all of us that do this type of practice is knowing exactly what is waived by these type of situations. The language of the manner in which it is determined, I think, is suspect and unclear. And I think that it does need guidance from the court about how to do that. I mean, clearly, and this is a silly example, and I'm not saying that this is what happened. Clearly, Judge Jones did much better than this. But we know that a judge can't roll dice. There's no opportunities for chance and that type of thing. And so to say that the manner in which it is determined is waived in all instances, whenever something can be clearly erroneous, I think is something that does need to be visited by this court. And as I had said last time, I know counsel had mentioned that we didn't object to certain things. There were a lot of objections related to the facts of this case. A lot of things like that. I think that is important. It's not as if they were just conceded by the defense. It's a question of, do we get to come to you all to say it, or do we just get our reason, our substantive reason for it? And if so, what does it mean to have a substantive reasonableness argument when there's no evidence about how the death contributes to it? And that's what we're pushing back on as well, and we think we get access to. And I think that does change how you look at a case. Doesn't that happen whenever we defer to a district court's reasoning? So, your honors, whenever you're taken away, whenever a defendant voluntarily says, you can't have the Tenth Circuit rule on a guideline calculation and what goes into it, was the credibility of that type of evidence? Did it go into it? Clearly, that's deference, and I think that as the government called it, there's an institutional advantage to these types of things. I think that's something that goes away in those types of things when we talk about that type of deference. But the question the defense is asking is just, how far does that go whenever we start to look at facts that truly don't connect? I'm over my time, but thank you, counsel. Thanks to both counsel. We really appreciate your arguments today. Counsel, the case will be submitted and you're excused.